**Logan R. OSTROM and Norma A. Ostrom, Plaintiffs,**

**v.**

**The CONRAD NATIONAL BANK OF KALISPELL, a national banking corporation, Defendant.**

No. CV 81–40–M.

United States District Court, D. Montana, Missoula Division.

Sept. 20, 1982.

Gary R. Christiansen, Warden, Christiansen, Johnson & Berg, Kalispell, Mont., for plaintiffs.

C. Eugene Phillips, Murphy, Robinson, Heckathorn & Phillips, Kalispell, Mont., for defendant.

OPINION

RUSSELL E. SMITH, District Judge.

Plaintiffs lost several hundreds of thousands of dollars playing the stock market on margin. In all of the stock market activity involved here plaintiffs were selling short through a broker. In these transactions plaintiffs did not own the stock which they sold at the time of sale, and as the market value of the stock increased, the broker, as

required by Regulation T (12 C.F.R. Part 220), called upon the plaintiffs for additional margin. Plaintiffs met the margin calls by borrowing from the defendant bank. It is not proved that the proceeds of any of the loans were used to acquire the initial short positions, and if they were it is not proved that the defendant knew that the money was being so used. It is clear, however, that at least as early as September 5, 1978, defendant did know that plaintiffs were borrowing for the purpose of meeting margin requirements.

By this declaratory judgment action plaintiffs seek to declare the notes evidencing such borrowings void on the ground that defendant, by making the loans, violated Section 7 of the Securities Exchange Act of 1934 (15 U.S.C. § 78g), and Regulation U promulgated by the Board of Governors of the Federal Reserve System (12 C.F.R. § 221.1(a)).

The initial and, as I see it, the dispositive question is whether the transactions here were governed by Regulation U. 12 C.F.R. § 221.1(a) reads in part as follows:

> [N]o bank shall extend any credit secured directly or indirectly by any stock for the purpose of purchasing or carrying any margin stock in an amount exceeding the maximum loan value of the collateral, as prescribed from time to time for stocks in § 221.4 (the Supplement to Regulation U)
> . . . .

Footnotes omitted.

Regulation U does not use the terms "short sale" or "short position." When the Board of Governors wanted to restrict the credit which could be used in short sales, as it did in Regulation T dealing with brokers, it used specific language to describe short sales and specific language to describe the credit limitations. *See* 12 C.F.R. §§ 220.3 and 220.8(d) and (g)(2). The fact that the Board did not use such specific language in Regulation U convinces me that it did not intend that some sort of a credit regulation governing short sales should be found lurking in the language which it did use.

Apart from this consideration, the language used by the Board negates an intention to regulate the credit which a bank might extend in connection with short sales. Thus, under Section 221.1(a), credit exceeding certain amounts may not be extended for the purpose of purchasing margin stock. But a contract to sell stock is not a contract to purchase stock and is obviously not described by the word "purchase" used in that section. However, the words "carrying any margin stock," used in Section 221.1(a), are not in themselves entirely clear. Under 12 C.F.R. § 221.3(v), the term "margin stock" is defined with reference to a "stock," and "stock" is defined in Section 221.3(1). There is in that definition no indication that a contract to sell stock is in itself a stock. By including in the definition of "stock" any "put" or "other option or privilege of . . . selling such a security to another without being bound to do so," the words in Section 221.3(1) distinguish between an option and a binding contract and suggest that a contract which binds one to sell is not a stock. That language in Section 221.3(v), which includes within the definition of the term "margin stock," "a debt security . . . carrying any warrant or right to subscribe to or purchase, presently or in the future, a margin stock," again refers to purchases and not sales.

A further indication that it was not intended that Regulation U govern short-selling is that Section 221.4, which fixes the maximum loan value of a stock, is senseless as applied to short sales. Thus the "maximum loan value" or "retention value" of a stock (except puts and calls, which have no loan value) is computed on the basis of a percentage of market value. These terms make no sense if applied to short sales because in a short sale, as distinguished from a long sale, as the market goes up, the investor's equity goes down.[1]

I conclude that the loans made by defendant to plaintiffs were not made in violation of law.

---

1. *See* Regulation T (22 C.F.R. § 220.8(d)) where the debit value, as distinguished from the value of a short sale in a general account, is 50% of market value.